UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ANTHONY JOHN RIPA,

                          Plaintiff,

      -against-                   **REPORT AND**
                                  **RECOMMENDATION**
STONY BROOK UNIVERSITY,      17-CV-4941 (JMA)(SIL)

                       Defendant.
-----------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this civil rights action, on referral from the Honorable Joan M. Azrack for Report and Recommendation, is Defendant Stony Brook University's (the "University" or "Defendant") motion to dismiss *pro se* Plaintiff Anthony John Ripa's ("Ripa" or "Plaintiff") Complaint ("Compl."). *See* Motion to Dismiss, Docket Entry ("DE") [10]; *see also* Compl., DE [1]. On August 22, 2017, Plaintiff commenced the instant action seeking money damages and equitable relief for violations of: (1) the Fourteenth Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983; (2) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and (3) Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"). *See id.* The Complaint also asserts a state-law slander claim. *See id.* Thereafter, Defendant filed the instant motion to dismiss, which Judge Azrack referred to this Court for a Report and Recommendation as to whether it should be granted. *See* DE [10, 26]. For the reasons set forth herein, the Court respectfully recommends that the motion

1

be granted in its entirety and that the Complaint be dismissed without prejudice and with leave to amend except for Plaintiff's Section 1983 cause of action, which should be dismissed with prejudice.

## I.   BACKGROUND

The following facts, set forth in the Complaint and the attached exhibits, are presumed true for purposes of Defendant's motion.[1]

*Pro se* Plaintiff Ripa brings this action alleging that Defendant has an unlawful preference for women and that he endured sex-based discrimination at the hands of one of his instructors Robert Cserni ("Cserni"). *See generally* Compl. As to the alleged preference for women, Ripa asserts that the University discriminates against men by maintaining a women's studies program without providing a corresponding curriculum for men. *See id.* According to Plaintiff, Defendant's women's studies program is "misandric" and that a specific program promoting "masculinism" is needed to achieve parity. *Id.* at 8. Further, Ripa claims to have had a discriminatory experience as a student in Cserni's classroom. *See id.* § V. In that context, Cserni purportedly committed "demographically based slander" by stating that, among other things, Plaintiff is "privileged." *Id.* at 8-9. Further, Ripa alleges that his work was mislabeled by Cserni as "missing and/or

---

[1] Because the Complaint is comprised of few factual allegations, the Court considers the documents attached to the pleadings, which provide further information regarding the purportedly unlawful conduct. *See Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561 (1992) ("[A] complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."). Further, the Complaint contains both numbered and unnumbered paragraphs. Where available, the Court uses paragraph numbers in its citations; otherwise, the Court cites to the relevant page number.

irrelevant," and as a result, Plaintiff received two grades of zero on different assignments. *See id.*

Based on the above, Ripa filed his Complaint on August 22, 2017. *See* DE [1]. The Complaint seeks money damages for the discrimination Ripa purportedly endured and equitable relief in the form of the University "losing its federal funding" for violations of: 1) the Fourteenth Amendment of the U.S. Constitution; (2) Title VII; and (3) Title IX. *See generally* Compl. The Complaint also asserts a state-law slander cause of action. *See id.* In response, the University moves pursuant to the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and (b)(6) to dismiss for a lack of subject matter and for failure to state a claim. *See* DE [10]. Judge Azrack thereafter referred the motion to dismiss to this Court for Report and Recommendation. *See* DE [26].

## II.  LEGAL STANDARD

### A. <u>Fed. R. Civ. P. 12(b)(1)</u>

Pursuant to Article III, Section 2 of the United States Constitution, "the jurisdiction of the federal courts is limited to 'Cases' and 'Controversies,' which 'restricts the authority of the federal courts to resolving 'the legal rights of litigants in actual controversies.'" *Amityville Mobile Home Civic Ass'n v. Town of Babylon*, No. 14-CV-2369, 2015 WL 1412655, at *2 (E.D.N.Y. Mar. 26, 2015) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 133 S. Ct. 1523, 1528 (2013)). In the absence of a case or controversy, Fed. R. Civ. P. 12(b)(1) "provides that a party may move to dismiss a case for lack of subject matter jurisdiction." *Amityville Mobile*

*Home*, 2015 WL 1412655, at *3. The Second Circuit has held that, "[t]he hallmark of a case or controversy is the presence of adverse interests between parties who have a substantial personal stake in the outcome of the litigation." *Evans v. Lynn*, 537 F.2d 571, 591 (2d Cir. 1975); *see also Ayazi v. N. Y. C. Bd. of Educ.*, No. 98-CV-7461, 2006 WL 1995134, at *2 (E.D.N.Y. July 14, 2006), *vacated on other grounds*, 315 Fed.App'x. 313 (2d Cir. 2009) ("Without standing, this court does not have jurisdiction to hear the claim."). Therefore, to survive a defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "a plaintiff must allege facts 'that affirmatively and plausibly suggest that it has standing to sue.'" *Brady v. Basic Research*, L.L.C., 101 F. Supp. 3d 217, 227 (E.D.N.Y. 2015) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In deciding a motion to dismiss for lack of subject matter jurisdiction, "a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001).

### B. <ins>Fed. R. Civ. P. 12(b)(6)</ins>

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). But, a pleading

"that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).  Where the complaint is filed by a *pro se* litigant, the Court must also be careful to "interpret the complaint liberally to raise the strongest claims that the allegations suggest."  *Rosen v. N. Shore Tower Apartments, Inc.*, 11-CV-00752, 2011 WL 2550733, at *2 (E.D.N.Y. June 27, 2011) (citing *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)).  Notwithstanding, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal.  *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court may consider:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted); *see also Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 425 (S.D.N.Y. 2008) ("[I]n assessing the legal sufficiency of a claim, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference.").

### C. Eleventh Amendment Sovereign Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. Although the Eleventh Amendment does not explicitly bar suits against a state by its own citizens, it is well established that a non-consenting state is immune from suits brought by its own citizens in federal court. *Clissuras v. City Univ. of New York*, 359 F.3d 79, 81 (2d Cir. 2004) (internal citations omitted). This immunity extends not only to the state itself, but also to entities considered "arms of the state." *Id.* (quoting *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001)). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908 (1984).

## III.  DISCUSSION

Applying the standards outlined above, and for the reasons set forth herein, the Court respectfully recommends that Defendant's motion to dismiss the Complaint be granted in its entirety. Initially, the Court considers the University's argument

that the Court lacks jurisdiction over Plaintiff's 42 U.S.C. § 1983 and Title IX causes of action.  The Court then examines Defendant's arguments for dismissal on their merits.

### A. <u>Subject Matter Jurisdiction</u>

At the onset, the University argues that the Court lacks subject matter jurisdiction over Ripa's Section 1983 and Title IX causes of action based on sovereign immunity and for lack of standing, respectively.  The Court considers each argument in turn.

### i. *Eleventh Amendment Immunity and Plaintiff's 42 U.S.C. § 1983 Claims*

Initially, the Court turns to the University's argument that Plaintiff's Section 1983 claim is barred by the Eleventh Amendment, and therefore, the Court lacks subject matter jurisdiction over this claim.  As set forth above, the Eleventh Amendment bars suits in federal court by private parties against a state absent consent to suit or an express statutory waiver of the state's otherwise presumed sovereign immunity.  *Board of Trustees of University of Alabama v. Garrett,* 531 U.S. 356, 362, 121 S. Ct. 955, 962 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.").  This same immunity from suit is extended to a state's agencies and departments understanding them to be arms of the state.  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146, 113 S. Ct. 684, 688 (1993); *see also McKnight v. Middleton*, 699 F. Supp. 2d 507, 521-23 (E.D.N.Y. 2010) (dismissing claims asserted against Kings County family court and family court judge in her

official capacity on sovereign immunity grounds).  Thus, a claim that is barred by a state's sovereign immunity is properly dismissed pursuant to the Eleventh Amendment for a lack of subject matter jurisdiction.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 1121 (1996) ("For over a century [the Supreme Court has] reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'"); *see also Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (citing *Va. Office for Prot. & Advocacy v. Stewart,* 563 U.S. 247, 252, 131 S. Ct. 1632, 1637 (2011) (noting that "the Eleventh Amendment ... confirm[s] the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article Ill's jurisdictional grant")).[2]

In contrast, 42 U.S.C. § 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities

---

[2] The Court is mindful that the question of "whether the claim of sovereign immunity [under the Eleventh Amendment] constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense" has not been definitively answered by the Supreme Court or the Second Circuit.  *Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) (citing *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391, 118 S. Ct. 2047, 2053 (1998) (leaving open the question of whether "Eleventh Amendment immunity is a matter of subject-matter jurisdiction"); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237-39 (2d Cir. 2006) (holding that the burden of proof regarding sovereign immunity rests on the party asserting it as is true of affirmative defenses generally)).  However, the Supreme Court repeatedly and recently has discussed the Eleventh Amendment as a jurisdictional bar and has confirmed that a state's sovereign immunity conferred by it can be raised for the first time on appeal.  *See Woods*, 466 F.3d at 237-38 (collecting cases).  Both holdings are consistent with the issue being jurisdictional.  *See id.*  As the exact characterization of Eleventh Amendment immunity does not substantively impact this Court's Report and Recommendation that the Complaint be dismissed, the Court assumes it to be jurisdictional and does not analyze the issue further.

8

> secured by the Constitution and laws, shall be liable to the
> party injured . . . .

42 U.S.C. § 1983.  Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate:  "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983).

Relevant here, the Eleventh Amendment serves to prevent state governments from being sued in federal court under 42 U.S.C. § 1983.  *See Willner v. Town of North Hempstead*, 977 F. Supp. 182, 193 (E.D.N.Y. 1997).  To that end, it is well-settled that states are not "persons" under section 1983 and, therefore, Eleventh Amendment immunity is not abrogated by that statute.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989) (holding that neither a state nor its officials acting in their official capacities are "persons" under § 1983).  Further, no relief is available against the University pursuant to 42 U.S.C. § 1983 as it is considered an integral part of the State of New York for Eleventh Amendment purposes.  *Dube v. State Univ. of New York*, 900 F.2d 587, 594-95 (2d Cir. 1990)

(internal quotation omitted).  *Id.*  Therefore, Ripa's Section 1983 claim is barred by the Eleventh Amendment and the Court recommends dismissal on this basis.[3]

## ii.  *Standing and Plaintiff's Title IX Claim*

The Court similarly concludes that Plaintiff lacks standing to assert a Title IX claim seeking injunctive relief due to the University's failure to establish a men's study program at the university.  However, Ripa does have standing to sue for money damages for past discrimination under the statute.  To establish standing, a plaintiff must satisfy three constitutional requirements:  "(1) injury-in-fact—an injury that is 'concrete and particularized' and is 'actual or imminent, not conjectural or hypothetical'; (2) an injury that is fairly traceable to the challenged action; and (3) an injury that will likely be redressed by a favorable ruling of the court."  *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 405 (E.D.N.Y. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992)); *see also Anjum v. J.C. Penney Co., Inc.*, No. 13-CV-460, 2014 WL 5090018, at *6 (E.D.N.Y. Oct. 9, 2014) ("Standing refers to the requirement that a plaintiff in federal court suffer a non-speculative injury-in-fact, traceable to the conduct of the defendant, and capable of redress by a favorable decision.").

"To establish injury-in-fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and

---

[3] The Court notes that the Eleventh Amendment does not bar plaintiff's Title VII and IX claims because Congress, pursuant to its powers under the Fourteenth Amendment, expressly abrogated the states' sovereign immunity as to those statutes.  *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666 (1975) (Title VII); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 118 S.Ct. 1989 (1998) (Title IX).

'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. ___, ___, 136 S.Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1, 112 S.Ct. at 2136 n.1. "In comparison, a "concrete" injury must be '*de facto*;' that is, it must actually exist." *Spokeo*, 578 U.S. at ___,136 S.Ct at 1548. An injury is not automatically concrete "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549.

The plaintiff must establish that he "has sustained or is immediately in danger of sustaining some direct injury . . . [that] must be both real and immediate." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 1665 (1983) (internal quotations and citations omitted). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 102, 103 S. Ct. at 1665. Further, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm . . . ." *Laird v. Tatum*, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 2325-26 (1972).

"The traceability requirement for Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury," and such a relationship can either be direct or indirect. *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013). The requirement that a complaint "allege[ ] an injury" that is "'fairly traceable' to defendants' conduct ... for [purposes of] constitutional

standing" is a "lesser burden" than the requirement that it show proximate cause. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 122 n.8 (2d Cir. 2003). Thus, the fact that there is an intervening cause of the plaintiff's injury may foreclose a finding of proximate cause but is not necessarily a basis for finding that the injury is not "fairly traceable" to the acts of the defendant for standing purposes. *Rothstein*, 708 F.3d at 92.

Redressability is the "non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106–07 (2d Cir. 2008). "[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561, 112 S.Ct. at 2130 (internal quotation marks omitted). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107, 118 S.Ct. 1003, 1019 (1998).

Within this circuit at least one court has previously addressed, and dismissed, a request for injunctive relief under Title IX similar to Ripa's for lack of standing. *See Hollander v. Inst. for Research on Women & Gender at Columbia Univ.*, No. 08-cv-7286, 2009 WL 1025960, at *4 (S.D.N.Y. Apr. 15, 2009) *aff'd* 372 F. App'x 140, 142 (2d Cir. 2010). In *Hollander*, a putative class challenged the existence of a women's studies program at Columbia University alleging that it promoted misandry and that a corresponding men's studies course of study was needed to counter its female analog. *Id.* The court dismissed the action for lack of standing and reasoned that the

12

alleged harm—namely the absence of a men's studies program—did not constitute a cognizable injury-in-fact.  In doing so, the court noted that, among other things, the plaintiffs had failed to allege that they were denied the opportunity to participate in the women's studies program.  As a result, the court found that the alleged harm amounted to no more than a "subjective chill" insufficient to satisfy the injury-in-fact requirement and therefore plaintiffs lacked standing to sue.  *See id.*

Here, as in *Hollander*, Plaintiff lacks standing to bring a Title IX claim for injunctive relief based on the absence of a men's studies program.  Specifically, Ripa fails to allege that he or any other student is currently denied the opportunity to participate in the University's women's studies program.  Nor does the Complaint assert any "real and immediate injury" derived from the curriculum.  Ripa's request for equitable relief under Title IX is unaccompanied by any claims of continuing present adverse effects.  Therefore, the Complaint fails to demonstrate a cognizable injury-in-fact so as to confer standing as to Ripa's Title IX claim for injunctive relief.  However, regarding the Complaint's request for money damages under Title IX, Plaintiff does adequately allege an injury-in-fact in the form of past discriminatory conduct purportedly committed by Cserni.  Further, this injury is traceable to Defendant's conduct, and if otherwise successful, Ripa could collect such actual damages, and therefore, has adequately alleged redressability.  As a result, Plaintiff has standing to bring a claim for money damages under Title IX.  Accordingly, the Court recommends that the prong of Ripa's Title IX claim which seeks injunctive

relief be dismissed for lack of standing but proceeds to address the merits of the portion of his Title IX cause of action which seeks money damages.

### B. <u>Failure to State a Claim</u>

Turning to the merits of the remaining claims, the University argues that both Ripa's Title VII and Title IX causes of action fail to state a claim. The Court agrees.

### i. *Title VII*

Ripa's Title VII claim is untenable on its merits. Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . . " 42 U.S.C. § 2000e-2(a). As noted by the Second Circuit, "Title VII is an employment law, available only to employees (or prospective employees) seeking redress for the unlawful employment practices of their employers." *Kern v. City of Rochester*, 93 F.3d 38, 45 (2d Cir. 1996) (internal citations omitted). To be held liable under Title VII for unlawful practices, an employer-employee relationship must have existed between the parties at the time of the alleged discrimination. *See id.* "Consequently, the existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006). To that end, the relationship between a student and a university is insufficient to maintain a claim under the statute. *See Morales v. New York*, 22 F. Supp. 3d 256, 271 (S.D.N.Y. 2014) ("Plaintiff fails to state a claim [ . . . ] because he is a student, not an employee, and is not protected by Title VII."). Here, Ripa fails to allege the existence of an employment

14

relationship between himself and the University.  Instead, Plaintiff asserts that he is a student attending the University, *see* Compl. at 9, and as such, he is unable to maintain a viable Title VII claim.  *See Bush*, 1996 WL 732558, at *2.  Accordingly, the Court recommends that Defendant's motion be granted as to Ripa's Title VII claim and that this cause of action be dismissed.

### ii.  Title IX

Finally, the Court recommends that Plaintiff's Title IX cause of action be dismissed.  Title IX prohibits educational institutions receiving federal financial assistance from discriminating against students or employees based on sex and provides a private cause of action for violations thereof.  *See* 20 U.S.C. § 1681; *see also North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 520-34, 102 S.Ct. 1912, 1917-25 (1982); *see also Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).  Under Title IX, a *prima facie* case of gender discrimination is established by a plaintiff showing:  (1) that he was subjected to discrimination in an educational program; (2) that the program receives federal assistance; and (3) that the discrimination was based on sex.  *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 533 (S.D.N.Y. 2013).  Further, a plaintiff can establish a hostile educational environment claim under the statute if he demonstrates "that he subjectively perceived the environment to be hostile or abusive and that the environment objectively was hostile or abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of his educational environment."  *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011).  To survive a motion to

15

dismiss, either type of claim requires specific allegations of intentional discrimination or circumstances "giving rise to a plausible inference of [ . . . ] discriminatory intent." *See Yusuf v. Vassar Coll.*, 35 F.3d 709, 712-14 (2d Cir. 1994).   Simply, "[b]ald assertions and conclusions of law will not suffice." *Rodriguez v. N.Y. Univ.*, No. 05-cv-7374, 2007 WL 117775, at *5 (S.D.N.Y. Jan. 16, 2007) (quoting *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996)).

Here, Plaintiff's Title IX claims fail as a matter of law for failure to plausibly allege intentional discrimination.   While Ripa asserts that Cserni purportedly committed "demographically based slander," he fails to explain what this legal conclusion is based on or allege any specific facts suggesting that he or other males were treated differently than female student so as to plausibly establish discriminatory intent.   Though Cserni purportedly stated that Plaintiff was "privileged," the Complaint fails to set forth any additional factual allegations that would allow a reasonable inference that this blanket comment was directed at Ripa's gender.   Instead, in its current form, the Complaint sets forth generic perceived teaching failures that are not directly linked to intentional discrimination based on sex.   Accordingly, because the Complaint has failed to allege facts from which one could plausibly infer discriminatory intent or motivation on the part of the University, the Court recommends dismissal of Plaintiff's Title IX claim.

### C. <u>Supplemental Jurisdiction Over State-Law Claims</u>

Having recommended that each of Ripa's federal claims be dismissed, the Court further recommends that the Court decline to exercise supplemental

jurisdiction over any remaining state law causes of action.  *See Quiroz v. U.S. Bank Nat'l Ass'n*, No. 10-CV-2485, 2011 WL 2471733, at *8 (E.D.N.Y. May 16, 2011) (recommending that the district court decline to exercise supplemental jurisdiction) (Report and Recommendation), *adopted by*, 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011).  Supplemental jurisdiction over Plaintiff's state-law claims is governed by 28 U.S.C. § 1367, which provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . " 28 U.S.C. § 1367(a).  However, a district court may decline to exercise supplemental jurisdiction where, as here, all claims over which it had original jurisdiction have been dismissed. 28 U.S.C. § 1367(c).  When such circumstances arise prior to the commencement of trial, Second Circuit precedent consistently recognizes that, "the balance of factors to be considered," which includes "judicial economy, convenience, fairness and comity," "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia v. Lee,* 316 F.3d 299, 305 (2d Cir. 2003).

Defendant filed its Rule 12 motion to dismiss the Complaint in lieu of an Answer.  *See* DE [10].  Thus, this litigation is still in its initial stages and no discovery has taken place.  Accordingly, the Court respectfully recommends that the University's motion to dismiss be granted as to Plaintiff's federal claims and the District Court decline to exercise supplemental jurisdiction over Ripa's state-law causes of action.  *See Quiroz*, 2011 WL 2471733, at *8 (recommending that the

district court decline to exercise supplemental jurisdiction over state law claim once federal claims were dismissed).

### D. <u>Leave to File an Amended Complaint</u>

Although Plaintiff did not request leave to amend, the Court may grant such leave "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has held that "a *pro se* litigant in particular 'should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'" *Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984)); *see also Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them"). Nevertheless, "a district court may deny leave to amend when . . . amendment would be futile because the problem with the claim 'is substantive ... [and] better pleading will not cure it.'" *Reynolds v. City of Mount Vernon*, 14-CV-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (quoting *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000)). Here, the Court cannot say with absolute certainty and upon a liberal reading of the Complaint that amendment would be futile. As such, the Court recommends that Plaintiff be granted leave to file a second amended complaint to include allegations that would satisfy the various pleading requirements under the standards addressed above, except for his 42 U.S.C. § 1983 claim as it is barred under the doctrine of sovereign immunity for which any amendment would be futile.

## IV.  CONCLUSION

Accordingly, based on the foregoing, the Court respectfully recommends that the motion to dismiss be granted in its entirety and that the Complaint be dismissed without prejudice, except for Plaintiff's 42 U.S.C. § 1983 cause of action, which should be dismissed with prejudice.

## V.  OBJECTIONS

A copy of this Report and Recommendation is being served on Defendant by electronic filing on the date below. Defendant is directed to serve a copy of this Report and Recommendation on Plaintiff and promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
      June 11, 2018

                                  /s/ Steven I. Locke
                                  STEVEN I. LOCKE
                                  United States Magistrate Judge